# EXHIBIT 1

eFiled
8.19.2026
Superior Court
of the District of Columbia

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

**PATRICIA WALTON**
5233 North Capitol Street NE, #217
Washington, D.C. 20011

and

**DIAMOND THORNE**
522 Hamilton Street NE
Washington, D.C. 20011

Individually and on Behalf of the
General Public of the District of Columbia,

Plaintiffs,

v.

**CELESTIAL SEASONINGS, INC.**
4600 Sleepytime Drive
Boulder, Colorado 80301

Defendant.

Case No. 2026-CAB-005842

**COMPLAINT**

**JURY TRIAL DEMANDED**

Hon. ________________

---

**COMPLAINT**

Plaintiffs Patricia Walton and Diamond Thorne ("Plaintiffs"), individually and on behalf of the General Public of the District of Columbia, bring this action against Defendant Celestial Seasonings, Inc. ("Celestial" or "Defendant") for unfair and deceptive trade practices in violation of the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 *et seq*. Celestial sells the Products—a line of fruit-flavored herbal teas—declaring on the front of every box that the teas are "Naturally Flavored with Other Natural Flavors" and contain "NO

ARTIFICIAL FLAVORS." But the Products contain an artificial flavoring ingredient—one that the FDA has recognized as "incompatible" with natural labeling for nearly twenty-five years: Manufactured Citric Acid (MCA). Unlike the naturally occurring citric acid found in citrus fruits, MCA is produced through industrial fermentation of the black mold *Aspergillus niger* and recovered from the fermentation liquor with petroleum-derived solvents. This is an artificial process. A consumer who reads "Citric Acid" on the ingredient panel of a box called "Lemon Zinger," beneath a front panel promising no artificial flavors, understands that ingredient to be an acid from citrus. It is not.

Defendant is aware of its Products' misleading claims. A substantially similar federal class action, *Carpenter v. Celestial Seasonings, Inc.*, No. 1:26-cv-00086 (D. Colo. filed Jan. 8, 2026), proceeds against this same Defendant on the same MCA / "no artificial flavors" theory as to the same teas. And the theory has already been tested against a Rule 12(b)(6) challenge and found legally sufficient: in *Ringler v. The J.M. Smucker Co.*, No. 2:25-cv-01138-AH-E (C.D. Cal.), the district court denied a motion to dismiss materially identical allegations that a food line marketed as natural contained artificial citric acid produced by industrial *Aspergillus niger* fermentation. Ringler, Dkt. No. 27, at 5–10 (May 13, 2025). Celestial has continued to sell the Products in the District bearing the same representations ever since *Carpenter* was filed. D.C. consumers are entitled to independent relief under the District's consumer protection laws.

Plaintiffs bring this action individually and on behalf of the General Public under D.C. Code § 28-3905(k)(1)(A), (k)(1)(B), and (k)(2). In the alternative, and only to the extent the Court rules that certification is required for relief on behalf of persons other than Plaintiffs, Plaintiffs plead class allegations under D.C. Super. Ct. Civ. R. 23 at Section VI.

## I. JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over this action pursuant to D.C. Code § 11-921(a) and D.C. Code § 28-3905(k)(1)(A), (k)(1)(B), and (k)(2). The CPPA expressly confers jurisdiction on this Court.

2. This Court has personal jurisdiction over Celestial pursuant to D.C. Code §§ 13-423(a) and 13-422. Celestial transacts business in the District of Columbia, contracts to supply goods in the District, advertises and markets its herbal teas in the District, has engaged in deceptive trade

practices throughout the District as further described herein, and derives substantial income from the sale of its herbal teas in the District.

3. Venue is proper in this Court because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in the District of Columbia, and because Celestial's unlawful trade practices were directed at, and caused injury to, consumers within the District. D.C. Code § 28-3904; *District Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 723 (D.C. 2003).

4. Plaintiffs bring this action exclusively under District of Columbia law and seek no relief under federal law. No allegation in this Complaint should be construed as asserting a claim under the Federal Food, Drug, and Cosmetic Act or any regulation promulgated under it, and Plaintiffs disclaim any such claim. Federal labeling regulations are pleaded solely as context of the market and the ordinary meaning a reasonable consumer attaches to the words Celestial prints on its boxes.

5. Plaintiffs' primary and preferred posture is the representative action authorized by D.C. Code § 28-3905(k)(1)(A) and (k)(1)(B). That vehicle is "a separate and distinct procedural vehicle from a class action" and is not a "class action" within the meaning of the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). *Animal Legal Def. Fund v. Hormel Foods Corp.*, 249 F. Supp. 3d 53, 64 (D.D.C. 2017).

6. CPPA per-consumer statutory damages are not aggregable to satisfy any federal amount-in-controversy threshold. *Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 103–06 (D.D.C. 2008) (applying the non-aggregation principle of *Snyder v. Harris*, 394 U.S. 332 (1969), to representative CPPA actions). The same non-aggregation principle defeats reliance on the aggregate cost of injunctive compliance and on aggregated statutory attorney's fees. *Hackman v. One Brands, LLC*, No. 18-cv-2101 (CKK) (D.D.C. Apr. 1, 2019) (remanding a CPPA general-public action for lack of removal jurisdiction where the defendant sought to aggregate compliance costs and fees across the public). No individual Plaintiff's claim, and no individual member of the General Public's claim, exceeds $75,000.

7. The class allegations pleaded at Section VI are pleaded strictly in the alternative and are contingent on a ruling Plaintiffs do not seek and will oppose. They are not an election of the class device, and Plaintiffs do not consent to the treatment of this action as a class action for any purpose.

Plaintiffs reserve the right to oppose any attempt by Celestial to remove this action and, in the event of remand, to seek fees and costs under 28 U.S.C. § 1447(c) to the extent warranted.

8. Plaintiffs will provide notice of this action to the Office of the Attorney General for the District of Columbia within ten days of filing, as required of a plaintiff acting on behalf of the general public. D.C. Code § 28-3905(k)(7)(B).

## II. PARTIES

### A. Plaintiffs

9. Plaintiff Patricia Walton is a natural person and a consumer in the District of Columbia. Ms. Walton purchased the Purchased Products in the District of Columbia for personal use and is a "consumer" within the meaning of D.C. Code § 28-3901(a)(2) (the "Walton Consumption Purchases"). After retaining counsel, Ms. Walton became aware of how the citric acid declared on Celestial's ingredient panels is manufactured, and subsequently bought another box of Celestial Seasonings Lemon Zinger Herbal Tea to test and evaluate pursuant to D.C. Code § 28-3901(a)(2) (the "Walton Evaluation Purchase").

10. Plaintiff Diamond Thorne is a natural person and a consumer in the District of Columbia. Ms. Thorne purchased the Purchased Products in the District of Columbia for personal use and is a "consumer" within the meaning of D.C. Code § 28-3901(a)(2).

11. Plaintiff Walton brings this action individually under D.C. Code § 28-3905(k)(1)(A) for her own damages, and on behalf of both herself and the General Public of the District of Columbia under D.C. Code § 28-3905(k)(1)(B). Plaintiff Thorne brings this action individually under D.C. Code § 28-3905(k)(1)(A). Section 28-3905(k)(1)(B) authorizes an individual to bring an action on behalf of both the individual and the general public "when that trade practice involves consumer goods or services that the individual purchased or received in order to test or evaluate qualities pertaining to use for personal, household, or family purposes."

12. The Purchased Products were purchased in two categories. Purchases in the first category were made for ordinary personal, family, and household consumption, in reliance on Celestial's front-panel representations, and give rise to individual damages under § 28-3905(k)(1)(A). The Walton Consumption Purchases and Ms. Thorne's purchases fall into this category. The purchase in the

second category was made with the intent to test and evaluate whether the Products' flavoring ingredients are in fact free of artificial substances, thus conferring standing under § 28-3905(k)(1)(B). The Walton Evaluation Purchase falls into this category. D.C. Code § 28-3905(k)(1)(B).

**B. Defendant**

13. Defendant Celestial Seasonings, Inc. is a corporation organized under the laws of the State of Colorado, with its principal place of business at 4600 Sleepytime Drive, Boulder, Colorado 80301. Celestial Seasonings is a wholly owned subsidiary of The Hain Celestial Group, Inc. (NASDAQ: HAIN), a publicly traded natural and organic food company. Celestial manufactures, markets, distributes, and sells herbal teas throughout the United States and specifically to consumers in the District of Columbia.

14. Celestial is a "merchant" within the meaning of D.C. Code § 28-3901(a)(3)(A) because it is a person who, in the ordinary course of business, sells, leases, or transfers, either directly or indirectly, consumer goods and services in the District of Columbia. *Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 709 (D.C. 1981).

15. Celestial's marketing, advertising, packaging, labeling, and sale of the Products are "trade practices" within the meaning of D.C. Code § 28-3901(a)(6).

**C. The Products**

16. This action concerns every herbal tea variety in Celestial's bagged line sold in the District of Columbia that (i) bears the front-panel claims "Naturally Flavored with Other Natural Flavors" and/or "NO ARTIFICIAL FLAVORS," and (ii) lists "Citric Acid" as a separately declared ingredient on its ingredient panel (collectively, the "Products").

17. The Products include, without limitation, the following varieties:

| **Variety** | **Pack** | **UPC** |
|---|---|---|
| Lemon Zinger Herbal Tea | 20 ct | 0 70734 05317 7 |
| Country Peach Passion Herbal Tea | 20 ct | 0 70734 05324 5 |
| Jammin' Lemon Ginger Herbal Tea | 20 ct | 0 70734 52333 5 |
| Peach + Probiotics Herbal Tea | 16 ct | 0 70734 54673 0 |

| | | |
|---|---|---|
| Wild Berry Zinger Herbal Tea | 20 ct | 0 70734 05335 1 |

18. Celestial Seasonings Lemon Zinger Herbal Tea (20-count) and Country Peach Passion Herbal Tea (20-count) (together, the "Purchased Products") are the varieties Plaintiffs purchased. The Products retail for approximately $5.99 to $7.49 per box and are sold and purchased for personal, household, and family use throughout the District of Columbia at retailers including Walmart, Safeway, Giant Food, and Whole Foods Market, at independent health-food retailers, and through online channels with delivery to District addresses.

19. The Products are materially identical for purposes of the trade practice challenged here. Each Product carries the same front-panel claims, each Product separately declares citric acid on its ingredient panel, and on information and belief each Product uses the same manufactured citric acid supplied through the same supply chain. The differences among them are the botanical blend and fruit flavoring of each variety.

## III. THE D.C. CONSUMER PROTECTION PROCEDURES ACT

20. The CPPA is a comprehensive remedial statute, "construed and applied liberally to promote its purpose." D.C. Code § 28-3901(c); *District Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 723 (D.C. 2003). The Act establishes "an enforceable right to truthful information from merchants about consumer goods and services that are or would be purchased, leased, or received in the District." D.C. Code § 28-3901(c).

21. Section 28-3904 prohibits any person from engaging in "an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby." The enumerated practices that follow are illustrative, not exhaustive. D.C. Code § 28-3904.

22. In 2012, the Council amended the CPPA to authorize tester standing expressly. D.C. Code § 28-3905(k)(1)(B); D.C. Law 19-282, § 2(b)(3). The same legislation confirmed that a person who "purchases or receives in order to test or evaluate qualities pertaining to use for personal, household, or family purposes" is a "consumer" under the Act. D.C. Code § 28-3901(a)(2)(B)(ii). The provision serves the function tester standing has long served in fair-housing and employment enforcement: it permits a purchaser to uncover concealed unlawful conduct that an ordinary

transaction might not necessarily reveal. *Cf. Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–74 (1982).

23. The remedial scope of a § 28-3905(k)(1)(B) action extends to the full consumer public of the District of Columbia and is not limited to persons who can demonstrate Article III injury-in-fact. The Council intended to confer standing to the full extent of its legislative power, displacing federal justiciability doctrines that apply in District of Columbia courts only as a matter of prudence. *Animal Legal Def. Fund v. Hormel Foods Corp.*, 258 A.3d 174, 178–84 (D.C. 2021).

24. Liability under the CPPA does not depend on proof of actual deception, individualized reliance, or out-of-pocket loss. The statute measures the merchant's conduct against what a reasonable consumer would understand. *See generally* § 28-3905.

## IV. FACTUAL ALLEGATIONS

### A. The Front-Panel Claims and the Ingredient Panels

25. On the front panel of each of the Products, Celestial prominently displays, alongside imagery of fresh herbs, fruits, and botanicals, the claims "Naturally Flavored with Other Natural Flavors" and "NO ARTIFICIAL FLAVORS" (together, the "No Artificial Flavors Representation"). Celestial further markets the line on representations of botanical purity, thoughtful sourcing, and quality ingredients, furthering the consumer's perception of a clean-label product.

26. Celestial reinforces the naturalness message on its website and marketing. Celestial tells consumers that "[t]he natural flavors we use are derived from real ingredients and do not contain artificial or synthetic additives." Frequently Asked Questions, Celestial Seasonings, https://celestialseasonings.com/pages/frequently-asked-questions. Celestial says that its teas are "Blended with Care: From Seed to Sip," that "[a]ll" of the raw ingredients are "tested for purity and quality," and that each tea is blended "from the finest ingredients, with n**o artificial flavors or colors**." Blended with Care: From Seed to Sip, Celestial Seasonings, https://celestialseasonings.com/pages/blended-with-care-from-seed-to-sip.

27. The ingredient panel on the back of each Product lists "Citric Acid" as a separately declared ingredient.

28. The No Artificial Flavors Representation is unqualified. Nothing on the packaging of any of the Products discloses that the citric acid is MCA, that it was produced by industrial fermentation of a black mold, that it was recovered with petroleum-derived solvents, or that it performs a flavor function.

**B. The "Citric Acid" in the Products Is Manufactured Citric Acid, Not a Fruit Extract**

29. Despite being sold under names like "Lemon Zinger" and "Country Peach Passion," and despite a front panel promising no artificial flavors, the citric acid in the Products is not derived from lemons, limes, or any other fruit. It is industrially manufactured—manufactured citric acid, or "MCA"—produced by fermenting a strain of the black mold *Aspergillus niger* on a carbohydrate substrate, then recovered from "*Aspergillus niger* fermentation liquor" with a chemical solvent system of "n-octyl alcohol," "synthetic isoparaffinic petroleum hydrocarbons," and "tridodecylamine." 21 C.F.R. § 173.280 (2025) ("Solvent extraction process for citric acid").

30. The overwhelming majority of the world's commercially supplied citric acid is produced through this industrialized extraction, rather than from citrus fruit. Sweis & Cressey, *Potential Role of the Common Food Additive Manufactured Citric Acid in Eliciting Significant Inflammatory Reactions Contributing to Serious Disease States*, 5 Toxicology Reports 808, 808 (2018); *see also* Behera, *Citric Acid from Aspergillus niger: A Comprehensive Overview*, 46 Critical Revs. in Microbiology 727, 727–49 (2020).

31. Black mold is not a fruit. It is not a spice, a vegetable, a recognized edible yeast, an herb, a bark, a bud, a root, a leaf, or similar plant material. It is a filamentous fungus cultured in industrial fermentation vessels on a carbohydrate feedstock, and the acid it produces is separated from the resulting liquor with petroleum-derived solvents.

32. Celestial possesses or controls the supplier specifications, certificates of analysis, purchase records, formulation records, quality-control records, and labeling-approval records that establish the citric acid's supplier, source, production method, and function in each of the Products. Those facts are peculiarly within Celestial's knowledge and control, and not subject to the Public's inspection.

**C. MCA Functions as a Flavoring Agent in the Products**

33. MCA functions as a flavoring agent in each of the Products. It imparts the tart, citrus-like taste characteristic of natural citric acid derived from lemons and other citrus fruits, and the Products' naming, labeling, and positioning trade on consumer associations with that taste profile. Celestial calls three of the Products "Zinger" teas and sells the line on the strength of its tartness—its "zing".

34. The Products themselves confirm that the MCA is added for flavor purposes, not preservative purposes. The Products are dry sachets of cut botanicals sealed in paperboard cartons. They are shelf-stable without acidification and require no pH control for preservation, the other cognizable reason for using MCA in products.

35. To that extent MCA falls within 21 C.F.R. § 101.22(a)(1) (2025), which defines an "artificial flavor" as any substance "the function of which is to impart flavor" and which is not derived from the enumerated natural sources, and the front-panel claim "NO ARTIFICIAL FLAVORS" is false. A substance need not exclusively function as a flavor to qualify as a flavoring agent under the regulation. That MCA may also assist in pH adjustment or preservation in other applications does not remove its taste function in these Products.

36. Independently, the claim "Naturally Flavored with Other Natural Flavors" is a representation about the origin of the Products' flavoring ingredients. Because the MCA that flavors the Products came from an artificial source, that representation is false as well, and it is false regardless of how the ingredient is characterized.

**D. FDA Has Treated Citric Acid as Incompatible With "Natural" Labeling for Nearly a Quarter Century**

37. For nearly twenty-five years, FDA has identified synthesized citric acid as an artificial and manufactured additive incompatible with "natural" labeling. In 2001, the agency warned Oak Tree Farm Dairy that its "Nothing Artificial" claim was misleading "because [it] contains citric acid." Warning Letter to Oak Tree Farm Dairy, U.S. Food & Drug Admin. (Aug. 16, 2001).

38. Two weeks later, the agency told Hirzel Canning that "the addition of … citric acid to these products preclude[s] the use of the term 'natural' to describe the product." Warning Letter to Hirzel Canning Co., U.S. Food & Drug Admin. (Aug. 29, 2001); *see also* Warning Letter to Fresh Express Inc., U.S. Food & Drug Admin. (Aug. 6, 2010).

39. Plaintiffs plead these materials as context of the clear, settled, and ordinary meaning of the words Celestial prints on its boxes. Plaintiffs do not seek to enforce the Federal Food, Drug, and Cosmetic Act or any regulation promulgated under it, and no count of this Complaint depends on a regulatory violation.

**E. Celestial's Own Product Line Betrays the Answer**

40. Celestial's formulation choices are corporate choices. Other Celestial Seasonings herbal teas—Cinnamon Apple Spice and Bengal Spice among them—bear the same "Naturally Flavored with Other Natural Flavors" front-panel claim and the same "no artificial flavors or colors" promise, and contain no separately listed citric acid on the ingredient panel. *Carpenter* Compl. ¶¶ 62–64.

41. The comparison is closer still within Celestial's own tart-fruit lines. Tangerine Orange Zinger Herbal Tea—a citrus "Zinger"—carries the same front-panel claims and lists no separately declared citric acid. Ginger + Probiotics Herbal Tea, from the same "+ Probiotics" line as Peach + Probiotics, lists none either. Celestial knows how to make a tart, fruit-forward tea without an industrially fermented acid, does so elsewhere in its portfolio, and sells those teas alongside the Products at comparable prices.

42. If the citric acid in the Products were genuinely "natural," it would be subsumed within the "Other Natural Flavors" already declared on the label—as it is on the labels of Celestial's other teas. Celestial's choice to list it separately on these Products but not the others reflects what it is: a synthetic flavoring agent that expressly contradicts Celestial's front-label claims.

**F. Clean-Label Price Premium Extraction**

43. The misrepresentation is material—and quantifiable. The Products retail for $5.99 to $7.49 per 20-count box in the District of Columbia. Functionally comparable store-brand herbal teas, making no "naturally flavored" or "no artificial flavors" claim, retail for $2.99 to $4.49 per box. That premium is captured by the front-panel declarations, and by nothing else.

44. A reasonable consumer in the District of Columbia, told truthfully that the tea contained citric acid manufactured by black mold (*Aspergillus niger*) fermentation and recovered with petroleum-derived solvents, would not have paid the premium—and many would not have purchased the Product at all.

**G. The Representation Was Misleading to a Reasonable Consumer and Was Not Cured by the Ingredient Panel**

45. A reasonable consumer reads "NO ARTIFICIAL FLAVORS" on the front of a tea box as a promise that the tea contains no artificially or synthetically produced flavoring substance. The representation is affirmative and unambiguous. It is not puffery, and it is not a phrase left open to competing readings.

46. Because the representation is affirmative and misleading, a reasonable consumer need not look past it to a smaller-print ingredient panel on the side of the carton to discover the truth. *See, e.g., Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008); *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636–37 (2d Cir. 2018) (an accurate ingredient panel does not cure an affirmatively misleading front-label claim).

47. The ingredient panel did not cure the representation in any event. It discloses two words —"Citric Acid"—and nothing more. It does not disclose the source, the production method, or the function.

48. A consumer who reads "Citric Acid" on a box called "Lemon Zinger," bearing an image of sliced lemons and a front panel promising no artificial flavors, reasonably understands the ingredient to be what its name says and what the front panel promises: an acid from citrus. The ingredient panel reinforces the misimpression the front panel creates rather than correcting it.

49. The representation was material. Whether a food contains artificially or synthetically produced flavoring ingredients is a fact to which a reasonable consumer attaches importance in deciding whether to buy and how much to pay. A representation is material under the CPPA where a reasonable person would attach importance to it in determining a choice of action, or where the merchant knows or has reason to know the consumer would regard it as important. *See Frankeny v. Dist. Hosp. Partners, LP*, 225 A.3d 999, 1005 (D.C. 2020); *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 445 (D.C. 2013).

**H. Celestial Is on Notice, and the Theory Has Survived a Motion to Dismiss**

50. On January 8, 2026, national consumer-protection counsel filed *Carpenter v. Celestial Seasonings, Inc.*, No. 1:26-cv-00086 (D. Colo.)—a 44-page class-action complaint alleging, with the same scientific sources cited above, that the citric acid in Celestial's herbal teas is industrially

synthesized by *Aspergillus niger* fermentation rather than extracted from any natural botanical source, and that Celestial's "Naturally Flavored" and "NO ARTIFICIAL FLAVORS" front-panel declarations are accordingly false. *See Carpenter* Compl. ¶¶ 40–53.

51. The legal theory has been tested. In *Ringler v. The J.M. Smucker Co.*, No. 2:25-cv-01138-AH-E (C.D. Cal.), the district court denied a Rule 12(b)(6) motion directed at materially identical allegations—that a food line marketed as natural contained artificial citric acid produced from industrial *Aspergillus niger* fermentation—holding the claims legally sufficient under the reasonable-consumer standard. Ringler, Dkt. No. 27, at 5–10 (May 13, 2025).

52. Plaintiffs do not contend that *Carpenter* or *Ringler* resolved whether the citric acid in the Products is in fact artificial. Plaintiffs plead them for two narrower purposes: that the theory advanced here has been tested against a Rule 12(b)(6) challenge and found legally sufficient, and that Celestial has had actual notice of these specific allegations since at least January 8, 2026.

53. Celestial has continued to sell the Products bearing the No Artificial Flavors Representation in District of Columbia retail channels every day since, without corrective disclosure, without reformulation, and without qualification of the front-panel claim.

54. Celestial controlled the preparation, approval, and dissemination of the Products' labeling. Celestial could have disclosed the citric acid's source and production method, qualified the representation, or reformulated the Products with a fruit-derived acid—or with no added acid, as it does elsewhere in its portfolio. It did none of those things. Its conduct was knowing, willful, and deliberate.

## I. Plaintiffs' Consumption Purchases, Reliance, and Injury

55. Ms. Walton has purchased Celestial Seasonings herbal teas regularly for years, rotating between Walmart and Safeway stores in the District of Columbia. During the applicable limitations period she purchased the Purchased Products, including Lemon Zinger Herbal Tea and Country Peach Passion, for her own personal, family, and household consumption, most recently in or about July 2026.

56. Ms. Thorne purchased the Purchased Products, including Country Peach Passion, at Giant Food, Safeway, and Whole Foods Market stores, and at independent health-food retailers, in the

District of Columbia during the applicable limitations period, for her own personal, family, and household consumption, most recently in or about March 2026.

57. Before each of these purchases, each Plaintiff saw and considered the No Artificial Flavors Representation on the front panel of the box at the point of sale in the District of Columbia.

58. Each Plaintiff understood the No Artificial Flavors Representation to mean that the Product contained no artificially or synthetically produced flavoring ingredient. That representation materially influenced each Plaintiff's decision to purchase.

59. Had Plaintiffs known that the citric acid in the Products is MCA—manufactured by industrial fermentation of *Aspergillus niger* and recovered with petroleum-derived solvents, rather than derived from citrus—and that Celestial uses it to impart the Products' characteristic tart taste, they would not have purchased the Products, would have purchased a different tea, or would have paid substantially less.

60. Plaintiffs did not receive the benefit of their bargain. Each paid the clean-label premium described above and received a product worth materially less than the price paid. Each suffered economic injury in an amount to be determined at trial.

61. Plaintiffs would purchase Celestial herbal teas again if the labeling were truthful, or if Celestial reformulated the Products to conform to the representation. Plaintiffs cannot presently determine from the label alone whether any given box contains MCA, and they therefore remain unable to make an informed purchasing decision.

**J. The Walton Evaluation Purchase**

62. In addition to the consumption purchases described above, Ms. Walton purchased a box of Celestial Seasonings Lemon Zinger Herbal Tea to test and evaluate whether its flavoring ingredients are in fact free of artificial substances and whether the No Artificial Flavors Representation is accurate.

63. Before July 29, 2026, but after her consumption purchases of the Products, Ms. Walton learned of the processes by which the citric acid used in commercial food manufacturing is produced—that it is industrially produced by fermentation of the black mold *Aspergillus niger* and recovered from

the fermentation liquor with petroleum-derived solvents—and that Celestial's herbal teas marketed with the "NO ARTIFICIAL FLAVORS" claim separately declare citric acid.

64. Before her next purchase, Ms. Walton formed the intent to acquire a box of Lemon Zinger Herbal Tea for the purpose of determining what the citric acid in it in fact is and how it is produced —facts not stated anywhere on the package and that she could not determine by reading the label.

65. On July 29, 2026, acting on that intent, Ms. Walton purchased a box of Celestial Seasonings Lemon Zinger Herbal Tea in the District of Columbia. She retained the sealed box unopened, so that counsel can have the product analyzed in a food-laboratory setting.

66. Ms. Walton's purpose in making the July 29, 2026 purchase was not to consume the tea. She purchased it to evaluate whether Celestial's representation about its flavoring ingredients was accurate—an evaluation directed at information Celestial does not disclose, and which no amount of label-reading would reveal.

## V. REPRESENTATIVE ACTION ALLEGATIONS

67. Plaintiffs bring this action on behalf of themselves and on behalf of the General Public of the District of Columbia pursuant to D.C. Code § 28-3905(k)(1)(A), (k)(1)(B), and (k)(2). Celestial's conduct was not directed at Plaintiffs alone; it was a uniform, District-wide trade practice executed through identical or materially identical packaging disseminated to every District purchaser of the Products.

68. The trade practice challenged in this action "involves consumer goods … that the individual purchased or received in order to test or evaluate qualities pertaining to use for personal, household, or family purposes" within the meaning of D.C. Code § 28-3905(k)(1)(B). Ms. Walton acts for the benefit of the General Public as a private attorney general under that provision.

69. The claims asserted rest on Celestial's standardized representations—the same front-panel language and the same separately declared ingredient—such that the interests of the General Public in halting and remedying the practice are aligned with Plaintiffs' own.

70. Members of the General Public who purchased the Products were subjected to the same unlawful trade practices and were damaged by the same representations through the same course of conduct.

71. Celestial's conduct continues to threaten ongoing and future injury to Plaintiffs and to the General Public because Celestial continues to sell and market the Products bearing the same representations, in the same District of Columbia retail channels, without corrective disclosure.

## VI. CLASS ACTION ALLEGATIONS (PLEADED IN THE ALTERNATIVE)

72. In the alternative, and only to the extent the Court holds that relief on behalf of the General Public under D.C. Code § 28-3905(k)(1)(A), (k)(1)(B), and (k)(2) requires class certification, Plaintiffs bring this action as a class action under D.C. Super. Ct. Civ. R. 23(a), 23(b)(2), and 23(b)(3), on behalf of a class of all natural persons in the District of Columbia who purchased one or more of the Products for personal, family, or household use, and not for resale, within the applicable limitations period (the "Class"). Excluded from the Class are Celestial; its officers, directors, employees, agents, affiliates, and legal representatives; any judicial officer assigned to this action and that officer's staff; and counsel of record.

73. **Numerosity**: The Class numbers at minimum in the thousands. The Products are sold at grocery and mass retailers throughout the District on a continuous basis, and joinder of all members is impracticable. Class members are objectively ascertainable from Celestial's own sales, distribution, retailer, and loyalty-program records. D.C. Super. Ct. Civ. R. 23(a)(1).

74. **Commonality and predominance**: Common questions of law and fact exist and predominate over any individual questions, because Celestial's representations were standardized and disseminated through identical or materially identical packaging. Those questions include: whether the citric acid in the Products is manufactured citric acid produced by industrial *Aspergillus niger* fermentation; whether such an ingredient is an artificial flavoring substance within the ordinary consumer meaning of "NO ARTIFICIAL FLAVORS"; whether the No Artificial Flavors Representation is false, misleading, or deceptive to a reasonable consumer; whether the omitted facts concerning the citric acid's source, production, and function are material; whether Celestial's conduct violates D.C. Code § 28-3904(a), (d), (e), (f), and (f-1); and the measure of statutory damages under § 28-3905(k)(2)(A).

75. **Typicality**: Plaintiffs' claims are typical of the Class's claims. Plaintiffs purchased Products bearing the same standardized representations, containing the same challenged ingredient, and assert the same legal theories on the same facts. D.C. Super. Ct. Civ. R. 23(a)(3).

76. **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the Class. Their interests are aligned with, and not antagonistic to, those of the Class, and they have retained counsel experienced in consumer-protection litigation under the CPPA. D.C. Super. Ct. Civ. R. 23(a)(4).

77. **Rule 23(b)(2)**: Celestial has acted and refused to act on grounds that apply generally to the Class, so that final injunctive and corresponding declaratory relief is appropriate respecting the Class as a whole.

78. **Rule 23(b)(3)**: Common questions predominate—such as whether Celestial's MCA is a "natural" ingredient to the reasonable consumer—and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy: individual statutory-damages claims are too small to litigate alone; concentrating the claims in this forum avoids inconsistent adjudications; and the action is manageable because liability turns on standardized packaging and a single ingredient from Celestial's line of products.

79. Nothing in this Section waives, and Plaintiffs expressly preserve, their primary position that the CPPA authorizes the representative relief sought herein without class certification. Plaintiffs do not seek certification absent a ruling from this Court that certification is required to seek public representative relief under the DC CPPA. These allegations become operative only upon a ruling that certification is required for relief on behalf of persons other than Plaintiffs.

## VII. CAUSES OF ACTION

### COUNT I

### Violation of D.C. Code § 28-3904(a)
### Representing That Goods Have Characteristics and Ingredients They Do Not Have

80. Each of the preceding paragraphs is incorporated herein by reference.

81. The CPPA makes it unlawful to "represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that

they do not have." D.C. Code § 28-3904(a). Section 28-3904 makes each enumerated practice a violation "whether or not any consumer is in fact misled, deceived, or damaged thereby."

82. Celestial represented, through the unqualified No Artificial Flavors Representation and its supporting marketing, that the Products had a characteristic and ingredient profile they did not have—an absence of artificially and synthetically produced flavoring substances—when in fact each Product contained manufactured citric acid produced by industrial fermentation, recovered with petroleum-derived solvents, and used to impart the Product's characteristic tart taste.

## COUNT II

**Violation of D.C. Code § 28-3904(d)**
**Representing That Goods Are of a Particular Standard or Quality When They Are of Another**

83. Each of the preceding paragraphs is incorporated herein by reference.

84. The CPPA makes it unlawful to "represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another." D.C. Code § 28-3904(d).

85. Celestial represented that the Products were of a particular standard and quality—herbal teas flavored naturally, blended "from the finest ingredients, with no artificial flavors or colors"—when in fact they were of another standard and quality entirely.

## COUNT III

**Violation of D.C. Code § 28-3904(e)**
**Misrepresentation as to a Material Fact With a Tendency to Mislead**

86. Each of the preceding paragraphs is incorporated herein by reference.

87. The CPPA makes it unlawful to "misrepresent as to a material fact which has a tendency to mislead." D.C. Code § 28-3904(e).

88. Celestial misrepresented a material fact with a tendency to mislead by representing that the Products contained no artificial flavoring substances when each Product contains manufactured citric acid as described above.

89. The misrepresentation was material and had a tendency to mislead reasonable consumers, including Plaintiffs and the General Public of the District of Columbia.

## COUNT IV

### Violation of D.C. Code § 28-3904(f)
### Failure to State a Material Fact Where the Failure Tends to Mislead

90. Each of the preceding paragraphs is incorporated herein by reference.

91. The CPPA makes it unlawful to "fail to state a material fact if such failure tends to mislead." D.C. Code § 28-3904(f).

92. Celestial failed to state material facts—that the citric acid in the Products is manufactured by industrial fermentation of the black mold *Aspergillus niger* and recovered from the fermentation liquor with petroleum-derived solvents, that it is not derived from citrus fruit or any other natural source, and that Celestial uses it to impart the Products' characteristic tart taste. Omitting those facts tended to mislead reasonable consumers who understood the unqualified No Artificial Flavors Representation to exclude such an ingredient.

93. The omission is material. From Celestial's marketing—both on the Products, and through Celestial's online advertising material—Celestial's brand premium is predicated on naturalness or a "clean label". A consumer purchasing a tea marketed as "Naturally Flavored with Other Natural Flavors" bearing a "NO ARTIFICIAL FLAVORS" declaration would not anticipate the presence of an industrially manufactured flavor-active acid, let alone one derived from a byproduct of black mold.

## COUNT V

### Violation of D.C. Code § 28-3904(f-1)
### Use of Innuendo or Ambiguity as to a Material Fact

94. Each of the preceding paragraphs is incorporated herein by reference.

95. The CPPA makes it unlawful to "use innuendo or ambiguity as to a material fact, which has a tendency to mislead." D.C. Code § 28-3904(f-1).

96. Celestial used innuendo and ambiguity as to a material fact. The two-word declaration "Citric Acid," placed on a box titled "Lemon Zinger," bearing an image of sliced lemons and promising "NO ARTIFICIAL FLAVORS," conveys to a reasonable consumer an acid derived from citrus. Celestial disclosed a name and withheld the source, the production method, and the function. That ambiguity had a tendency to mislead.

97. Plaintiffs plead Counts I through V in the alternative to the extent they are inconsistent, as permitted by D.C. Super. Ct. Civ. R. 8(e)(2).

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the General Public of the District of Columbia, respectfully request that this Court enter judgment in their favor and against Celestial as follows:

A. Declaring that Celestial's labeling, marketing, and sale of the Products using the No Artificial Flavors Representation violated D.C. Code § 28-3904;

B. Awarding each Plaintiff statutory damages of treble damages, or $1,500 per violation, whichever is greater, on her individual claim pursuant to D.C. Code § 28-3905(k)(2)(A)(i);

C. On behalf of the General Public, awarding statutory damages of treble damages, or $1,500 per violation, whichever is greater, for each purchase of a Product bearing the challenged representations by a member of the General Public of the District of Columbia within the applicable limitations period, pursuant to D.C. Code § 28-3905(k)(1)(B) and (k)(2)(A)(i);

D. Awarding punitive damages pursuant to D.C. Code § 28-3905(k)(2)(C), Celestial's conduct having been willful, knowing, and deliberate—Celestial has had actual notice of these specific allegations since at least January 8, 2026, when the *Carpenter* complaint was filed, and has continued to sell the Products in D.C. retail channels every day since;

E. Entering a permanent injunction pursuant to D.C. Code § 28-3905(k)(2)(D) restraining Celestial from representing, on any label, package, website, in-store display, or other consumer-facing medium, that any herbal tea contains "NO ARTIFICIAL FLAVORS" or

is "Naturally Flavored with Other Natural Flavors" unless the representation is truthful, non-misleading, and adequately qualified, and ordering corrective disclosure;

F. Awarding such additional relief as may be necessary to restore to consumers money or property acquired by means of the unlawful trade practices, pursuant to D.C. Code § 28-3905(k)(2)(E), including restitution and disgorgement of the price premium;

G. In the alternative, and only if the Court concludes that certification is required for relief on behalf of persons other than Plaintiffs, certifying the Class under D.C. Super. Ct. Civ. R. 23(b)(2) and 23(b)(3), appointing Plaintiffs as class representatives, and appointing undersigned counsel as class counsel;

H. Awarding reasonable attorney's fees and costs pursuant to D.C. Code § 28-3905(k)(2)(B);

I. Awarding pre- and post-judgment interest as permitted by law; and

J. Granting such other and further relief as this Court determines proper, pursuant to D.C. Code § 28-3905(k)(2)(F).

## IX. JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: August 19, 2026

Respectfully submitted,

*/s/ Andreas E. Moffett*

______________________________

Andreas E. Moffett (D.C. Bar No. 1736007)
**ORION IMPACT LITIGATION, P.C.**
1717 N Street NW
Washington, D.C. 20036
(202) 750-1052
Andreas@OrionImpactLitigation.com

**LAUKAITIS LAW LLC**
Kevin Laukaitis (pro hac vice forthcoming)

954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
(215) 599-6072
klaukaitis@laukaitislaw.com

**REESE LLP**
Michael R. Reese (pro hac vice forthcoming)
100 West 93rd Street, 16th Floor
New York, New York 10025
(212) 643-0500
mreese@reesellp.com

Counsel for Plaintiffs and the General Public

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Patricia Walton, 5233 North Capitol Street NE, #217, Washington, DC 20011, AND
Diamond Thorne, 522 Hamilton Street NE, Washington, DC 20011

Plaintiff

vs.

Case Number 2026-CAB-005842

Celestial Seasonings, Inc., 4600 Sleepytime Drive, Boulder, Colorado 80301

Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Andreas E. Moffett (D.C. Bar No. 1736007)
Name of Plaintiff's Attorney

Orion Impact Litigation, P.C., 1717 N Street NW
Address
Washington, D.C. 20036

(202) 750-1052
Telephone

*Clerk of the Court*

By ______________
Deputy Clerk

Date **August 20, 2026**

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME*.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA

**DIVISIÓN CIVIL**

**Sección de Acciones Civiles**

**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**

**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

Demandante

contra

Número de Caso: ____________________

Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

*SECRETARIO DEL TRIBUNAL*

Nombre del abogado del Demandante

Por: ____________________

Subsecretario

Dirección

Fecha ____________________

Teléfono

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828 로 전화주십시요    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

DO NOT COMPLETE

# Superior Court of the District of Columbia

CIVIL DIVISION - CIVIL ACTIONS BRANCH

INFORMATION SHEET

Patricia Walton, 5233 North Capitol Street NE, #217, Washington, DC 20011, AND Diamond Thorne, 522 Hamilton Street NE, Washington, DC 20011
Plaintiff(s)

vs

Celestial Seasonings, Inc., 4600 Sleepytime Drive, Boulder, Colorado 80301
Defendant(s)

Case Number: 2026-CAB-005842

Date: 8/19/2026

☐ One of the defendants is being sued in their official capacity.

| Name: *(Please Print)* Andreas E. Moffett | Relationship to Lawsuit |
|---|---|
| Firm Name: Orion Impact Litigation, P.C. | ☑ Attorney for Plaintiff<br>☐ Self (Pro Se)<br>☐ Other: ________ |
| Telephone No.: (202) 750-1052   DC Bar No.: 1736007 | |

TYPE OF CASE: ☐ Non-Jury ☐ 6 Person Jury ☑ 12 Person Jury

Demand: $______________ Other: See Complaint

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:__________ Judge: __________ Calendar #:__________

Case No.:__________ Judge: __________ Calendar #:__________

NATURE OF SUIT: *(Check One Box Only)*

**CONTRACT**
- ☐ Breach of Contract
- ☐ Breach of Warranty
- ☐ Condo/Homeowner Assn. Fees
- ☐ Contract Enforcement
- ☐ Negotiable Instrument

**COLLECTION/INS. SUB**
- ☐ Debt Collection
- ☐ Insurance Subrogation
- ☐ Motion/Application for Judgment by Confession
- ☐ Motion/Application Regarding Arbitration Award

**EMPLOYMENT DISPUTE**
- ☐ Breach of Contract
- ☐ Discrimination
- ☐ Wage Claim
- ☐ Whistle Blower
- ☐ Wrongful Termination

**REAL PROPERTY**
- ☐ Condo/Homeowner Assn. Foreclosure
- ☐ Declaratory Judgment
- ☐ Drug Related Nuisance Abatement
- ☐ Ejectment
- ☐ Eminent Domain
- ☐ Interpleader
- ☐ Other
- ☐ Quiet Title
- ☐ Specific Performance

- ☐ **FRIENDLY SUIT**
- ☐ **HOUSING CODE REGULATIONS**
- ☐ **QUI TAM**
- ☐ **STRUCTURED SETTLEMENTS**

**ADMINISTRATIVE PROCEEDINGS**
- ☐ Administrative Search Warrant
- ☐ App. for Entry of Jgt. Defaulted Compensation Benefits
- ☐ Enter Administrative Order as Judgment
- ☐ Libel of Information
- ☐ Master Meter
- ☐ Petition Other
- ☐ Release Mechanics Lien
- ☐ Request for Subpoena

**MALPRACTICE**
- ☐ Medical – Other
- ☐ Wrongful Death

**AGENCY APPEAL**
- ☐ Dangerous Animal Determination
- ☐ DCPS Residency Appeal
- ☐ Merit Personnel Act (OEA)
- ☐ Merit Personnel Act (OHR)
- ☐ Other Agency Appeal

☐ **APPLICATION FOR INTERNATIONAL FOREIGN JUDGMENT**

# Information Sheet, Continued

**CIVIL ASSET FORFEITURE**
- ☐ Currency
- ☐ Other
- ☐ Real Property
- ☐ Vehicle

**NAME CHANGE/VITAL RECORD AMENDMENT**
- ☐ Birth Certificate Amendment
- ☐ Death Certificate Amendment
- ☐ Gender Amendment
- ☐ Name Change

**TORT**
- ☐ Abuse of Process
- ☐ Assault/Battery
- ☐ Conversion
- ☐ False Arrest/Malicious Prosecution
- ☐ Libel/Slander/Defamation
- ☐ Personal Injury
- ☐ Toxic Mass
- ☐ Wrongful Death (Non-Medical Malpractice)

**GENERAL CIVIL**
- ☐ Accounting
- ☐ Deceit (Misrepresentation)
- ☐ Fraud
- ☐ Invasion of Privacy
- ☐ Lead Paint
- ☐ Legal Malpractice
- ☐ Motion/Application Regarding Arbitration Award
- ☐ Other - General Civil
- ☐ Product Liability
- ☐ Request for Liquidation
- ☐ Writ of Replevin
- ☐ Wrongful Eviction

**CIVIL I/COMPLEX CIVIL**
- ☐ Asbestos

**MORTGAGE FORECLOSURE**
- ☐ Non-Residential
- ☐ Residential

**STATUTORY CLAIM**
- ☐ Anti – SLAPP
- ☑ Consumer Protection Act
- ☐ Exploitation of Vulnerable Adult
- ☐ Freedom of Information Act (FOIA)
- ☐ Other

**TAX SALE FORECLOSURE**
- ☐ Tax Sale Annual
- ☐ Tax Sale Bid Off

**VEHICLE**
- ☐ Personal Injury
- ☐ Property Damage

☐ **TRAFFIC ADJUDICATION APPEAL**

☐ **REQUEST FOR FOREIGN JUDGMENT**

[signature]

Filer/Attorney's Signature

8/19/2026

Date